UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEQUAN WIGGINS, | Crim. No. 21-926 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

This matter comes before the Court on the motion of Defendant Dequan Wiggins ("Defendant") to suppress evidence and for an evidentiary hearing. ECF No. 35. For the reasons set forth below, Defendant's motion for an evidentiary hearing is **granted.**

I.     BACKGROUND

The facts taken from the police report and the criminal complaint are contested by Defendant. According to the police report, law enforcement was instructed to conduct intelligence gathering in certain hot spot locations due to a recent increase in gun violence and narcotic activity. Newark Police Incident Report, Def.'s Br. in Supp. of Mot. to Suppress, Ex. A. On or about December 18, 2020 at about 5 PM, Detectives Marc Castro and Steven Resendes saw Defendant's vehicle, a blue Jeep Cherokee with a Pennsylvania license plate, ("Jeep") parked in a known drug distribution location with its engine running and no lights on. Compl., Attachment B. Upon passing the Jeep, Det. Castro noticed the driver, later identified as Defendant, sit back into his seat trying to get out of view, but keeping his head facing forward while continuously looking at Det. Castro with his eyes. The passenger, later identified as Quadri Fleming ("Fleming"), was behaving similarly. Det. Castro also saw that the front windshield was cracked. *See* GX-2; *see also* Motor Vehicle Summons, GX-3.

Det. Castro advised other detectives over the radio that he and Det. Resendes were going to conduct a stop of the Jeep. Other detectives later came to the scene to support the investigation. Det. Castro approached the Jeep driver's side and illuminated the windshield with his flashlight to further investigate. Defendant began nervously removing a piece of black plastic from his right pants pocket, which he proceeded to open while stuttering "I only have a few pills on me." The plastic contained three pills suspected to be Endocet, a

1

controlled substance. Due to the packaging of the pills, Det. Castro believed them to be for distribution. He asked Defendant to step out of the Jeep, advised him that he would be placed under arrest for possession of the pills, then walked him to the rear of the Jeep. Det. Resendes asked Fleming to step out and relinquished him to Det. Ricardo Maceira for further questioning.

Once Defendant and Fleming were out of the Jeep, Det. Castro, using his flashlight, observed another green pill, suspected to be "ecstasy" inside of the cup holder. Then as other officers began searching the Jeep interior, Sgt. Emanuel Pereira observed that the housing of the instrument cluster, which was behind the steering wheel, was loose and slightly off the dashboard. Sgt. Pereira shined his flashlight through the gap between the cluster and the dashboard and saw what appeared to be a handgun. When Sgt. Pereira proceeded to touch the cluster, it came off revealing a handgun. Sgt. Pereira informed the other detectives about the gun using the police code to refer to a gun. Defendant then blurted out: "he don't have anything to do with it, it's mine." Defendant denied officers access to the locked glove compartment.

The search incident to arrest revealed Defendant to be in possession of an orange pouch containing $168 cash, bank cards, health care card, keys to a Chevrolet Malibu, a grey iPhone, and a black flip phone. Later, when law enforcement was rendering the gun to be safe, another green pill, also suspected to be ecstasy, was found in the barrel of the gun. The gun, a .9mm semiautomatic pistol, was also loaded with seven rounds of ammunition. A subsequent search of the information on the firearm showed that the gun had been reported stolen out of Atlanta, GA on December 27, 2019.

Contrary to the facts cited in the Police Report, Defendant has submitted an affidavit stating that he was sitting in his legally parked Jeep when police officers approached his vehicle with flashlights shining and guns drawn. Def.'s Aff. in Supp. of Pretrial Mot. ("Def. Aff."), ¶ 2. Police demanded that he exit the vehicle and when he did, they conducted a pat-down search. Officers asked him if he was in possession of anything sharp that could poke them and he informed them that he had Percocet pills in his front pocket. Officers then conducted a search of the Jeep over Defendant's objection, discovered the handgun, and then arrested Defendant.

I. **DISCUSSION**

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. Amend. IV. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Defendant argues that he was unlawfully seized when without any reasonable suspicion, detectives with guns drawn ordered him to exit his vehicle and detained him while conducting a pat down.

2

Defendant claims that police officers then unlawfully searched him and his vehicle and accordingly seeks to suppress the firearm seized from his vehicle.

### A. Standard

"As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). Once the defendant establishes a basis for his motion, the "burden shifts to the government to show that the search or seizure was reasonable." *Id*. The government must prove by a preponderance of the evidence that "each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005).

A hearing regarding a motion to suppress evidence is necessary when a defendant presents a "motion [that] is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome . . . ." *E.g., United States v. Fattah*, 858 F.3d 801, 810 (3d Cir. 2017) (quoting *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010)); *see also United States v. Panitz*, 907 F.2d 1267, 1273-74 (1st Cir. 1990) ("The test for granting an evidentiary hearing in a criminal case should be substantive: [D]id the defendant make a sufficient threshold showing that material facts were in doubt or dispute?").

### B. Reasonable Suspicion

The legality of the seizure under *Terry v. Ohio*, 391 U.S. 1 (1968) is determined by "whether that seizure was justified by reasonable, articulable facts known to [the officer] as of that time that indicated that [the suspect] was engaged in criminal activity." *United States v. Lowe*, 791 F.3d 424, 430 (3d Cir. 2015) (citing *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003)). "In evaluating whether reasonable suspicion existed, a court 'must consider the totality of the circumstances, including the police officer's knowledge, experience, and common-sense judgments about human behavior.'" *United States v. Navedo*, 694 F.3d 463, 468 (3d Cir. 2012) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)). "Courts give considerable deference to police officers' determinations of reasonable suspicion." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).

The decision to stop an automobile is generally a reasonable "seizure" where the police have reasonable suspicion of a traffic violation, even if the ultimate charge is not related to the traffic stop. *See Whren v. United States*, 517 U.S. 806-810 (1996); *Mosley*, 454 F.3d at 252 (noting that in *Whren*, "the Supreme Court established a bright-line rule that *any* technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." (emphasis added)). According to the Government, police had reasonable suspicion of a traffic violation - a cracked windshield

on the Jeep, which is a technical violation of New Jersey Motor Vehicle Code 39:3-74.[1] In addition to the cracked windshield, the Government asserts that Defendant's furtive movements contributed to the officers' reasonable suspicion that criminal conduct was afoot. *See United States v. Harrison,* 2018 WL 4405892, at *8 (E.D. Pa. Sept. 17, 2018) ("suspect's furtive movements can contribute to an officer's reasonable suspicion that criminal activity is afoot"). Moreover, the Jeep was idling in an area where surveillance was necessitated by a surge of gun violence and narcotics activity. *See Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) ("officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.").

Defendant, however, contends that he was "legally parked" when police approached with guns drawn. Def. Aff., ¶ 2. Additionally, even if Defendant sitting back in his seat or his eye movements are "furtive," it is unclear how officers were able to observe furtive movements or a crack in the windshield at nighttime around 5 PM in December. Because there are disputed issues of material fact that will affect the determination of whether the police had reasonable suspicion to stop the Jeep, which in turn affects whether the subsequent searches were constitutional, Defendant's motion for an evidentiary hearing is **granted.**

## II. CONCLUSION

For the foregoing reasons, Defendant's motion for an evidentiary hearing on his motion to suppress the firearm, ECF No. 35, is **granted.** An appropriate Order accompanies this Opinion.

**Dated: October 17, 2022**

WILLIAM J. MARTINI, U.S.D.J.

---

[1] New Jersey Motor Vehicle Code 39:3-74 provides: "[n]o person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides."

4